(7 App. Div. 242)

SOOYSMITH & CO. v. VENNER.

(Supreme Court, Appellate Division, First Department.   June 29, 1896.)

CONTRACTS—INTERPRETATION.

Defendant, in constructing a well, had sunk an iron pipe, 42 inches in diameter, to a depth of 50 feet, terminating in a stratum of quicksand, with a stratum of hardpan below. Being unable to proceed further with the work, defendant employed plaintiff to sink a 38-inch pipe to a proper depth to reach a water-bearing stratum, it being agreed that plaintiff would, "by means of Portland cement or other suitable material, bar out quicksand between the bottom of the present tube and the stratum of hardpan." *Held*, that such provision required plaintiff only to make the joint between the 42-inch tube and the 38-inch tube proof against the quicksand, and not to prevent the quicksand from going down the outside of the 38-inch tube, where it passed through the hardpan.

Appeal from judgment on report of referee.

Action by Sooysmith & Co., a corporation organized under the laws of New Jersey, against Clarence H. Venner.   Judgment was rendered in favor of plaintiff, and defendant appeals.   Affirmed.

The action was brought upon a written contract between the parties to recover the amount agreed to be paid by the defendant for the performance by the plaintiff of the work provided for under the contract. The defense was that the work had not been completed by the plaintiff in accordance with the terms of the contract. The contract was made June 15, 1888, and recited that the defendant was desirous of building a well, to enable the Adrian Michigan Waterworks to supply the city of Adrian with water; that there was a well on the premises of the waterworks, in which there was sunk a boiler-iron tube, 42 inches in diameter, to a depth of about 50 feet below the bottom of the well; that defendant desired to procure an extension of that tube to be sunk down to and into the water-bearing stratum, which was believed to exist at a depth of within 6 or 7 feet below the bottom of the present tube; that it was intended to make such extensions by means of a 38-inch tube by the pneumatic system; and that the bottom of the present 42-inch tube was in quicksand, and it was believed that at a distance of from 1 to 2 feet there existed a stratum of hard pan from 1 to 2 feet in thickness, and below that there was the water-bearing stratum; and it was agreed that the plaintiff would provide the necessary 38-inch tube of ⅜ in thickness iron, and all the appliances and machinery for sinking the same, and sink the 38-inch tube to such proper depth into the water-bearing stratum as in the judgment of plaintiff would best accomplish the result desired, provided, that such depth should not exceed 7 feet below the bottom of the present tube. And that plaintiff would, by means of Portland cement, or other suitable material, bar out quicksand between the bottom of the present tube and the stratum of hard pan.  *  *  *  All work to be done in a first-class and substantial manner.  *  *  *  And that upon the completion of the work  *  *  *  the defendant would pay the plaintiff the sum of $5,000 in full payment for the work and materials.  *  *  *  Under this contract the plaintiff furnished the materials and did the work, but the defendant refused to pay the $5,000, on the ground that the work was not done and completed as required by the contract.   Quicksand entered the tube, and filled it up to a considerable depth, and it was claimed this resulted from a failure by plaintiff to complete the work as provided by the contract, or from the improper or negligent manner in which it was done.   The plaintiff did so join together the ends of the 42 and the 38 inch tubes as to prevent any quicksand entering at that junction, and the quicksand concededly entered the tube from the lower end of the 38-inch tube in the water stratum; but the defendant claims that the quicksand descended from above the hard-pan stratum, on the outside of the tube, and that it was the duty of the plaintiff, under the terms of the contract, to prevent such quicksand from going down through the space between the tube and the hard-pan stratum, and entering the pipe below the tube through

the water stratum. It seems also to be claimed that the filling of the tube with quicksand from below, even, resulted from the improper performance of plaintiff of the work, and the removal of the appliances from the tube and well. The referee held that the proper construction of the contract was that plaintiff should only bar out the quicksand from the tube by securely joining the two tubes together at their junction with each other, and was not required to bar the quicksand from passing down from above the hard-pan stratum, and between it and the tube, into the water stratum, and entering the tube at the lower end of the 38-inch pipe; and that there was no negligence in the performance of the work; and thereupon ordered the judgment in favor of the plaintiff, from which this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Melville Egleston, for appellant.
Frederic B. Jennings, for respondent.

WILLIAMS, J. There seems to be no dispute but that the quicksand which filled the tube entered through the bottom of the 38-inch tube in the water stratum. There is dispute as to where the quicksand came from,—whether it was in the water stratum before the 38-inch tube was sunk, or whether it went down from above the hard-pan stratum during the time the work was being done or after it was completed; and whether, if it went down from above the hard-pan stratum, it went down through an opening around and next to the outside of the tube, or through other openings originally existing, or which had been made by defendant while sinking the 42-inch tube, or while making borings to ascertain the condition of things below the bottom of the 42-inch tube. It cannot reasonably be claimed that the duty of the plaintiff to prevent the quicksand from going down from above the hard-pan stratum extended beyond the closing up of any opening around and next to the 38-inch tube, so as to prevent sand going down there. Considering the manner in which the 38-inch tube was sunk, and the work was done, it is quite doubtful whether any opening was left about the tube through which the quicksand could have found its way into the water stratum below, and whether the presence of the quicksand in the tube should not be accounted for in one of the other ways suggested. But, whether this be true or not, there seems to have been no way, considering the manner in which the work was done, in which any opening outside the 38-inch tube, and between it and the hard-pan stratum, could, by the use of Portland cement or other suitable materials, have been closed up. The only place in which such material could have been applied was between the 38-inch and 42-inch tubes by way of making the joints between the two sized tubes firm and solid, so as to prevent quicksand entering the tubes at that point. The connection with the hard pan was necessarily made by sinking the 38-inch tube through it, and there was no way in which material could be applied outside the 38-inch tube so as to strengthen such connection between the tube and the hard pan next to it. The contract could be construed in view of these considerations. It could not well be said that the parties intended the plaintiff

should do any act in carrying out the contract which was impossible in the ordinary way in which such work was to be done. The construction of the contract claimed by the plaintiff seems to have been concurred in by the defendant. Underwood, writing for defendant the letter of July 25, 1888, said:

"* * * On taking out the sand, the joint between the 42 and 38 inch pipe, which was a part of your contract to make, was found to be gone, and this accounted for the presence of the sand in the tube. I want nothing but what is fair, but I want to know that the tube is tight; that the joint is well made, so that the sand won't come in; and there is no way of ascertaining that fact without making a test of the tube with the air taken off. * * * The very object of the tight joint was to keep out the quicksand just above the hard pan, as you will see by referring to the contract."

In view of the suggestions here made, and of the reasons stated by the learned referee in his opinion, we regard the construction given by the referee to the clause of the contract in question as the proper one, and we see no reason to doubt the correctness of the decision made in the case. We concur in the conclusion arrived at by the referee that the proofs failed to establish any negligence on the part of the plaintiff in the performance of the work, rendering it useless and of no value.

The judgment appealed from should be affirmed, with costs. All concur.